IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ROSALINO PEREZ-BENITES, et al.                            PLAINTIFFS

VS.                              CASE NO. 07-CV-1048

CANDY BRAND, LLC, et al.                                  DEFENDANTS

### ORDER

Before the Court is Plaintiffs' Motion for Certification of Collective Action, for Notice, and for Disclosure of Opt-in Plaintiffs' Contact Information. (Doc. No. 59). The Defendants have responded and do not oppose the motion. (Doc. No. 64). The matter is ripe for consideration.

This lawsuit was filed by three Mexican farmworkers who entered the United States in 2005 and/or 2006 with H-2A guest worker visas to harvest and pack tomatoes in and around Bradley County, Arkansas, for the Defendants, Candy Brand, LLC, Arkansas Tomato Shippers, LLC, Charles Searcy, Randy Clanton, Dale McGinnis and Brooks Linesby. These H-2A workers are pursuing this action against the Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, along with state and federal contract law.[1] The H-2A workers claim that the Defendants, as a matter of policy and practice, required them to bear their recruitment, passport, visa, transportation and border crossing expenses. They contend that these expenses were primarily for the benefit of the Defendants and, as a result, must be considered *de*

---

[1] In addition to the three named representative Plaintiffs, 26 potential opt-in plaintiffs have already filed consents to sue pursuant to the FLSA Count of the Plaintiffs' Amended Complaint.

*facto* wage deductions driving their wages below the federal minimum wage during their first week of work. Additionally, the H-2A workers claim that the Defendants, as a matter of policy and practice, failed to pay them and other employees (H-2A and non-H-2A employees) federally mandated overtime wages when they worked more than forty hours in a work week in Defendants' packing shed operations. The H-2A workers are suing on behalf of themselves and all nonsupervisory workers employed by Defendants at any time between June 1, 2004 and the date of judgment in this matter who were employed as H-2A temporary agricultural workers, or who were employed in the Defendants' packing shed operations, irrespective of visa status.

In the instant motion, the H-2A workers request an Order conditionally certifying Court I of their Amended Complaint as a collective action under the FLSA, 29 U.S.C. §§ 201-219. They also request that the Court authorize the issuance of their proposed Notice to potential opt-in Plaintiffs, and that the potential opt-in Plaintiffs be provided 120 days from the date the Notice is mailed to file consent forms to participate in the collective action. Finally, Plaintiffs request that the Court issue an Order requiring the Defendants to provided to the Plaintiffs—to the extent the information is available—all addresses, telephone numbers, social security numbers, birthdates, and passport numbers for the collective action members. The Defendants do not oppose the Plaintiffs' requests.

DISCUSSION

*Collective Action Certification Under the FLSA*

Section 216(b) of the FLSA provides that any one or more employees may maintain an action to recover the liability prescribed in the section against any employer on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). These collective

actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights. *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482 (1989).[2] Unlike Federal Rule of Civil Procedure 23, a collective action maintained under FLSA is pursued as an opt-in class. *Compare* 29 U.S.C. § 216(b) (stating that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.") *with* Fed.R.Civ.P. 23(c) (requiring that the notice to class members include a statement "that the court will exclude from the class any member who requests exclusion ...").

The district courts have discretion, in appropriate cases, to facilitate notice to potential members of the class on whose behalf the collective action has been brought. *Id.* at 169, 110 S.Ct. at 486. Once the FLSA action has been filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way. *Id.* at 170-71, 110 S.Ct. at 486.

The prevailing approach among federal courts for determining what "similarly situated" means in a collective action context under section 216(b) is the two-state certification process described in *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995). *See e.g., Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006)(applying two-stage approach as that "typically used by the courts" in cases filed under 29 U.S.C. § 216(b)); *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095 (10th Cir. 2001); *Grayson v. K Mart Corp.,* 79

---

[2] *Hoffman-La Roche* involved the Age Discrimination in Employment Act (ADEA). However, the ADEA incorporates section 216(b) of the FSLA in its enforcement scheme. *See* 29 U.S.C. § 626(b). Thus, courts have applied the holdings and analysis in ADEA collective action cases to FLSA collective action cases. *See Schmidt v. Fuller Brush Co.,* 527 F.2d 532, 536 (8th Cir. 1975).

F.3d 1086 (11th Cir. 1996); *Allen v. McWane, Inc.,* 2006 WL 3246531, *2 (E.D.Tex. 2006)(applying the two-stage approach as the "prevailing test among federal courts" in cases filed under 29 U.S.C. § 216(b)).  Under this approach, certification for collective action is divided into two stages:  (1) the notice stage and (2) the opt-in or merits stage. *Mooney,* 54 F.3d at 1213-1214.  During the notice stage, the court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice should be given to potential class members. *Id.* at 1213.  If the court allows for notification, the court typically creates conditional certification of a representative class and allows notice to be sent to the potential opt-in plaintiffs. *Id.* at 1214.

At the second state of the two-stage process, the court determines whether the class should be maintained through trial.  Typically, the second stage is precipitated by a motion to decertify by the defendant, which is usually filed when discovery is largely complete. *Id.*  If the court decides to decertify the class, the opt-in class members are dismissed from the suit without prejudice and the class proceeds only for the class representatives in their individual capacities. *Id.*

Here, the Plaintiffs move the Court to conditionally certify their class under the two-stage approach.  Although the Eighth Circuit has not yet declared which approach it favors (the two-stage approach or the Rule 23 approach[3]) in deciding whether plaintiffs are similarly situated under 29 U.S.C. § 216(b), the districts courts in this circuit use the two-stage analysis. *Schleipfer v. Mitek Corp.,* 2007 WL 2485007 (E.D.Mo. 2007) (citing *Parker v. Rowland Express, Inc.,* 492

---

[3] To certify a class under Rule 23, the plaintiff must establish numerosity, commonality, typicality, and representativeness. *See* Fed.R.Civ.P. 23(a).

F.Supp.2d 1159 (D.Minn. 2007)); *Davis v. Novastar Mortgage, Inc.,* 408 F.Supp.2d 811 (W.D. Mo. 2005); *Dietrich v. Liberty Square L.L.C.,* 230 F.R.D. 574 (N.D. Iowa 2005); *McQuay v. American Int'l Group, Inc.,* 2002 WL 31475212 (E.D. Ark. 2002)).  Moreover, other circuits have held that the standard for certification of a collective action under section 216(b) is considerably less stringent than the standards for certification of a class action under Rule 23. *See Grayson,* 79 F.3d at 1096, 1106 (11th Cir. 1996);  *see also Thiessen,* 267 F.3d at 1105 (10th Cir. 2001)(stating that Congress clearly chose not to have the Rule 23 standards apply to class actions under the ADEA [or FLSA] and instead adopted the "similarly situated" standard.  Thus, the Court believes the more prudent approach is to use the two-stage certification analysis that is used by a majority of the courts, including a majority of the district courts in the Eighth Circuit.

The question before the Court is whether, under the lenient standard of the notice stage, the named Plaintiffs, through their pleadings and affidavits, have demonstrated that they are "similarly situated" to the potential collective action members.  *See* 29 U.S.C. § 216(b).  Although, the FLSA does not define the term "similarly situated," it typically requires a showing that the plaintiffs and potential class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion.  *See Thiessen,* 267 F.3d at 1106-08; *Kautsch v. Premier Communications,* 504 F.Supp.2d 685 (W.D. Mo. 2007).  Further, the "similarly situated" determination requires only a modest factual showing; it does not require the plaintiff and the potential class members to show that they are identically situated.  *Id.*

Here, Plaintiffs allege that they and other similarly situated individuals who worked in Defendants' operations were not paid the minimum and overtime wages required by the FLSA during certain pay periods.  They claim that these FLSA violations were the result of uniform

policies and practices by the Defendants that affected Plaintiffs and the potential collective action members.  Plaintiffs claim that not only are there similar legal issues in this case but the factual settings of the representative Plaintiffs and the potential collective action members are also similar.   They claim that they have knowledge of this because they worked alongside Defendants' other workers, lived in the same apartments provided by Defendants, traveled together from Mexico to Defendants' operations in Arkansas, spoke to Defendants' other workers about their work and pay, and worked with family who experienced the same pay problems.

Considering the lenient notice standard at this early stage of the litigation, the Court is satisfied that the Plaintiffs have met their burden of showing that conditional certification is proper.  In fact, Defendants do not oppose conditional certification at this stage.  Therefore, the Court hereby conditionally certifies the Plaintiffs' FLSA claims as a collective action on behalf of the following class:

> All nonsupervisory workers employed by Defendants at any time between June 1, 2004 and the date of judgment in this matter who were employed as H-2A temporary agricultural workers, or who were employed in the Defendants' packing shed operations, irrespective of visa status.

If, after the close of discovery, Defendants believe that they can persuade the Court that the potential collective action members are not similarly situated, Defendants should file a motion for decertification.

*Plaintiffs' Proposed Notice*

Plaintiffs have submitted a proposed notice to be sent to potential opt-in plaintiffs.  The Defendants do not object to the notice.  The Court has reviewed the proposed notice, consent

form and contact information sheet (Doc. 59-15), and the Court approves the notice. Thus, Plaintiff are authorized to send notice of the suit to potential opt-in plaintiffs. The notice, in English and in Spanish, will be sent by first class mail to potential collective action members with addresses in the United States. The Spanish version of the notice will be sent by first class mail to those potential collective action members with addresses in Mexico. Plaintiffs' counsel will bear the cost of the mailings. The opt-in plaintiffs are given 120 days from the date of the mailing of the notice in which to file their consent forms to participate in the collective action. Plaintiff's counsel should file a certificate of mailing with the Court when the mailing of notices is effectuate and the opt-in period has begun.

*Plaintiff's Information Request*

Finally, Plaintiffs request that the Defendants be ordered to provide Plaintiffs—to the extent the information is available—all names, addresses (U.S. and foreign), telephone numbers (U.S., foreign, and cell phone), social security numbers, birthdates, and passport numbers of the potential opt-in plaintiffs in order to assist in the issuing of the notices. Defendants do not object to providing this information and have, in fact, provided some of the requested information already. Thus, Defendants are hereby directed to provide the Plaintiffs with the remaining names, addresses and other contact information requested within fourteen (14) days of the date of this Order.

IT IS SO ORDERED, this 31st day of October, 2008.

                                            /s/Harry F. Barnes
                                            Hon. Harry F. Barnes
                                            United States District Judge