UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| ROSALINO PEREZ-BENITES, et al., | ) ) | |
| Plaintiffs | ) ) ) | Case No. 1:07-CV-1048 |
| vs. | ) ) | Judge Barnes |
| CANDY BRAND, LLC et al., | ) ) ) | Class Action |
| Defendants. | ) ) ) ) | |

## DEFENDANT BROOKS LISENBEY'S BRIEF IN SUPPORT OF HIS AMENDED MOTION FOR SUMMARY JUDGMENT

### I. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998).

Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-moving party must set forth specific facts showing there is a genuine issue for trial.  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine

dispute over those facts that could actually affect the outcome of the lawsuit." Id; see Ricks v. Clark, 2009 U.S. Dist. LEXIS 6146, 4-5 (E.D. Ark. Jan. 27, 2009).

Plaintiffs allege Defendant Brooks Lisenbey ("Lisenbey"), as well as other Defendants, violated the Fair Labor Standards Act ("FLSA" or "the act") and specifically, violated 29 U.S.C. § 216(b), the minimum wage and overtime provisions of the FLSA for two (2) separate class members:  Class I Plaintiffs (more commonly defined as farm workers); and Class II Plaintiffs (more commonly defined as shed workers).  Plaintiffs also allege Lisenbey and other Defendants violated or breached certain employment contracts.

As analyzed below, however, Lisenbey does not meet the definition of an "employer" under the FLSA for either class of Plaintiffs and thus cannot be individually liable under the act. Further, Lisenbey did not enter into any employment contracts with Plaintiffs.  As a result, the Plaintiffs have failed to establish any genuine issues of material fact regarding their claims against Lisenbey, and therefore, all claims against Defendant Brooks Lisenbey must be dismissed as a matter of law.

## II.  LISENBEY WAS NOT AN EMPLOYER UNDER THE FEDERAL LABOR STANDARDS ACT AND THEREFORE, CANNOT BE LIABLE UNDER THE ACT.

Plaintiffs allege Lisenbey as well as other Defendants violated the FLSA by failing to pay Plaintiffs the applicable minimum wage for every compensable hour of labor performed in a work week.  *See* Plaintiffs' Amended Complaint, pg. 12, ¶59.  Although Lisenbey did not employ or hire them, Plaintiffs allege Lisenbey is individually liable because, presumably, he meets the definition of an "employer" under the FLSA and therefore liable.

Under the FLSA, an "employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203.  Applicable Arkansas law,

2

Ark. Code Ann. § 11-4-607(2), also defines "employer" as "any person, natural or artificial, acting in the interest of an employer directly or indirectly."

Because the phrase "acting directly or indirectly in the interest of an employer in relation to an employee" taken literally would support liability against any agent or employee with supervisory power over employees, courts have looked to several factors to narrow and more clearly define what individuals can be considered an employer under the FLSA.  The United States Supreme Court has held a determination of whether an employer/employee relationship existed for purposes of the FLSA should be grounded in "economic realities."  Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961).  As illustrated below, courts around the country look to similar relevant factors in interpreting the economic reality of a workplace relationship.

The Eighth Circuit Court of Appeals and Arkansas courts, for instance, has held an individual is an employer only if the individual had (1) control of hiring and firing of employees, (2) control of the manner in which work is performed, *and* (3) could set or determine the employees' wages.  Dole v. Continental Cuisine, Inc., 751 F. Supp. 799, 802-803 (E.D. Ark. 1990); see Wirtz v. Pure Ice Company, 322 F.2d 259 (8th Cir. 1963); Fruco Const. Co. v. McClelland, 192 F.2d 241 (8th Cir. 1951).

In Dole v. Continental Cuisine, Inc., the Arkansas court found the Defendant was not an "employer" within the meaning of the FLSA.  According to Dole, the Defendant did not (1) hire and fire employees, (2) control the methods of operation at Graffiti's, or (3) set hourly wages, or control the payroll.  According to the court, these responsibilities were performed by another individual and therefore, the Defendant could not be an employer under the FLSA. Dole v. Continental Cuisine, Inc., 751 F. Supp. 799, 803 (E.D. Ark. (1990).

3

The Second Circuit Court of Appeals similarly held an individual can only meet the definition of an employer if that individual:

(1)   had the power to hire and fire the employee;

(2)   supervised and controlled employee work schedules or conditions of employment;

(3)   determined the rate and method of payment; and

(4)   maintained employment records.

Ling Nan Zheng v. Liberty Apparel Co., 355 F.3d 61 (2nd Cir. 2003); Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir. 1984); Beck v. Boce Group, L.C., 391 F. Supp. 2d 1183 (S.D. Fla. 2005); Burerrong v. Uvawas, 922 F. Supp. 1450 (C.D. Cal.1996).

Courts have also analyzed whether the alleged "employer" had ownership of the property and facilities where the work occurred and whether the individual had investments in the equipment and facilities being used at the work-site.  Rutherford Food Corp. v. McComb, 331 U.S. at 7730, 67 S. Ct. at 1477; Wirtz v. Lone Star Steel Co., 405 F.2d 668 (5th Cir. 1968).  Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754-755 (9th Cir.1979).

Put in another way, a person is responsible as an "employer" of another where the work follows the usual path of the employee, and where, as a matter of economic reality, the employee is dependent upon that person for their livelihood.  The touchstone of economic reality in analyzing the possible employment relationship is clearly economic "dependency."   Haywood v. Barnes, 109 F.R.D. 568 (E.D.N.C. 1986).

The Eleventh Circuit Court of Appeals held an individual defendant could not be an employer under the FLSA if (1) he was not involved in the day-to-day operations of the business, (2) he was not responsible for the hiring, firing, or supervision of the employees, and (3) he had

no say in determining employees' compensation.  <u>Alvarez Perez v. Sanford-Orlando Kennel Club Inc.</u>, 515 F.3d 1150 (11th Cir. 2008).

The Eleventh Circuit Court of Appeals also held an individual was not an employer unless the individual had operational control of significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee. <u>Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986)</u>.  In <u>Patel</u>, the court acknowledged the Defendant *could have*, if he had chosen, played a greater role in the operations of the company, but in holding the Defendant was not an employer the court focused on the *actual role played*. <u>Patel, 803 F.2d at 638</u>. [Emphasis Supplied]  In other words, it is not what kind of control an individual *could* have had, but what control the individual *actually* displayed.

Similarly, other courts have held in order to be individually liable under the act, a person must exercise sufficient control over certain aspects of the employer's operations.  For instance, a court may find employer status under the FLSA, but only when an individual has managerial responsibilities and substantial control over the terms and conditions of an employee's work, such as hours and pay.  <u>Herman v. RSR Sec. Serv. Ltd.</u>, 172 F.3d 132 (2nd Cir. 1999); <u>Lambert v. Ackerley</u>, 180 F.3d 997 (9th Cir. 1999); <u>Baystate Alternative Staffing v. Herman</u>, 163 F.3d 668 (1st Cir. 1998); <u>Donovan v. Agnew</u>, 712 F.2d 1509 (1st Cir. 1983).

The court in <u>Keun-Jae Moon v. Joon v. Gab Kwon</u>, 248 F.Supp. 2d 201 (S.D.N.Y. 2002) determined a hotel president was an employer under the FLSA, but only because he played an intimate role in the day-to-day operations of the hotel by supervising and determining the employee's work responsibilities and employment conditions, and even hiring the employee and arranging housing for him.

Turning to the case at bar, it is clear that separate Defendant Brooks Lisenbey was not an employer under the FLSA and therefore, not liable under the FLSA.

During all times relevant to Plaintiffs' Complaint, Lisenbey was employed by Mckinstry Trading to buy and sell produce. As Lisenbey testified in his deposition, he was "merely the buyer and the seller" of produce for Mckinstry. See Exhibit "A", Lisenbey Deposition, pg. 165, lines 3-5; Exhibit "B", Denise Lisenbey Deposition, pg. 24, lines 3-5. Simply stated, Lisenbey had no "operational control" over the H2-A workers hired by Candy Brand. This is supported by Lisenbey's sworn affidavit, the affidavits of Randy Clanton and Charlie Searcy, the testimony of the Plaintiffs in this matter, as well as all other evidence.

Mckinstry Trading (hereinafter "Mckinstry") was a company owned by Lisenbey's wife, Denise Lisenbey. Exhibit "C", Lisenbey Deposition, pg. 20, lines 3-8. The company was a brokerage firm in which Lisenbey's exclusive job duties were to buy and sell produce, and more particularly, to sell produce to anyone Mckinstry had a brokerage agreement with. Exhibit "D", Lisenbey Deposition, pg. 19, lines 23-24; pg. 36, lines 12-19. Although based out of Arizona, Mckinstry required Lisenbey to come to Arkansas for approximately two months out of the year to buy and sell tomatoes. Exhibit "E", Lisenbey Deposition pg. 36, lines 12-19. While in Arkansas, Mckinstry would be provided an inventory of tomatoes and Lisenbey's job was to simply sell the product. Exhibit "F", Lisenbey Deposition, pg. 36, lines 11-25.

The Plaintiffs, who are H2-A employees, neither allege nor submit any evidence that Lisenbey and/or Mckinstry Trading hired or employed workers for Mckinstry Trading. Instead, Plaintiffs allege Lisenbey was an "employer" under the FLSA because Lisenbey had operational control over the H2-A employees hired by Candy Brand. In order to demonstrate this level of control and thus liability under the FLSA, Plaintiffs must prove Lisenbey (1) had the power to

hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) maintained employment records; (5) owned the facilities where work was performed; and (6) had investments in the facilities and/or equipment.

As analyzed below, however, none of these factors apply to Lisenbey, and therefore, Lisenbey was not an employer under the FLSA and not liable for any violation thereof.

Candy Brand, LLC is a named Defendant in this matter and was responsible for the hiring of the H2-A workers in this matter. As he testified in his deposition, Lisenbey did not assert any operational control over any of the H2-A employees hired by Candy Brand. Exhibit "G", Lisenbey Deposition, pg. 67, lines 20-23; pg. 81, lines 9-12. See a true and correct copy of the affidavit of Brooks Lisenbey at Exhibit "H." This fact is confirmed by Charlie Searcy and Randy Clanton, individuals who owned Candy Brand.

In his attached affidavit, Randy Clanton swore under oath that Lisenbey did not: (1) supervise or control H2-A employee work schedules or conditions of employment at Candy Brand; (2) did not determine the rate or method of pay for H2-A employees of Candy Brand; and (3) did not maintain employment records of H2-A employees of Candy Brand. See a true and correct copy of the affidavit of Randy Clanton at Exhibit "I", and second Affidavit at Exhibit "J".

Similarly, Charlie Searcy's affidavit states Lisenbey did not: (1) supervise or control H2-A employee work schedules or conditions of employment at Candy Brand; (2) did not determine the rate or method of pay for H2-A employees of Candy Brand; and (3) did not maintain employment records of H2-A employees of Candy Brand. See a true and correct copy of the affidavit of Charlie Searcy at Exhibit "K". Even if Lisenbey had authority to do so, and he did not, Lisenbey never exercised or exerted any operational control over the workers. Courts have

held one must not only have the authority, but also exert that authority over a H2-A worker in order for the individual to be an "employer" under the FLSA. See Patel, 803 F.2d at 638. Nevertheless, Lisenbey testified he was not involved in the decision to hire any H2-A workers and had no control over the H2-A workers hired by Candy Brand. Exhibit "L", Lisenbey Deposition, pg. 167, lines 23-25; pg. 168, lines 1-5. *See* a true and correct copy of the affidavit of Brooks Lisenbey at Exhibit "H."

As far as how the workers arrived in Arkansas, Lisenbey testified "I had very little understanding how any of the process worked." Exhibit "M", Lisenbey Deposition, pg. 122, lines 12-13. Lisenbey indicated he traveled to Mexico on one occasion to see how the workers were hired and to become acquainted with the process. Exhibit "N", Lisenbey Deposition, pg. 114, lines 17-18. But according to Lisenbey, he merely wanted to see what it was like. Exhibit "O", Lisenbey Deposition, pg. 118, lines 7-9. In fact, Lisenbey indicated, "I [came] back with very little knowledge…" Exhibit "P", Lisenbey Deposition, pg. 122, line 23. Again, this is not operational control as required by the FLSA and well established case law.

This lack of operational control over the H-2A workers is not only found in Lisenbey's testimony and attached affidavits, it is also found in the testimony of other individuals, including the Plaintiffs themselves.

In late September, 2009, the Plaintiffs' counsel, Mr. Jim Knoepp, took the depositions of six (6) opt-in Plaintiffs in Mexico to "preserve their testimony for potential use at trial" and, presumably, to strengthen and validate their claims against the Defendants in this matter. See Plaintiffs' Response in Opposition to Defendant's Motion for Protective Order. The testimony of these Plaintiffs, however, only confirms and supports Lisenbey's position that he was not an "employer" of these Plaintiffs. Several Plaintiffs had rarely seen Lisenbey, much less be able to

testify that Lisenbey: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) maintained employment records; (5) owned the facilities where work was performed; and/or (6) had investments in the facilities and/or equipment. In order for Lisenbey to be an "employer" under the FLSA, the Plaintiffs must prove the above factors are applicable to Lisenbey. The Plaintiffs, however, cannot satisfy any factor, much less all of them as required by the referenced case law.

Maria Elena Martinez Morales, for instance, was one of the Plaintiffs who testified in Mexico. Although Plaintiff Martinez worked for Candy Brand for three (3) years, she testified under oath she did not even know who Brooks Lisenbey was. Exhibit "Q", Deposition of Maria Elena Martinez Morales, page 18, lines 17-19; page 27, lines 16-18.

Plaintiff Jose Antonio Estrada Ascencio testified he also had worked for Candy Brand for two (2) years, and he did not know who Lisenbey was. Exhibit "R", Deposition of Jose Antonio Estrada Ascencio, page 51, lines 14-15.

Plaintiff Blas Burboa Leyva testified he worked at Candy Brand for two (2) years, but only saw Lisenbey on three occasions and never had any conversations with him. According to Plaintiff Burboa, Lisenbey would rarely be in the packing shed. Exhibit "S", Deposition of Blas Burboa Leyva, page 68, lines 3-4. Plaintiff Burboa also testified he did not know what Lisenbey's job description was or whether Lisenbey had the ability to control or determine the Plaintiff's rate of pay. Exhibit "T", Deposition of Blas Burboa Leyva Page 68, lines 20-23. Page 70, lines 9-12.

Plaintiff Maria Mireya Cortes Gonzalez testified she had worked at Candy Brand for three (3) years. Although Plaintiff Cortes indicated she knew who Lisenbey was, she testified

that out of the three (3) years she worked at Candy Brand she never had any conversations with him. Plaintiff Cortes did not know what Lisenbey's job responsibilities were, whether Lisenbey could determine the work schedule of the workers or if he could determine their rate of pay. Plaintiff Cortes also testified she did not know if Lisenbey maintained the employment records at Candy Brand. Exhibit "U", Deposition of Maria Mireya Cortes Gonzalez, page 72, lines 24-25; page 73, lines 1-25; page 74, lines 1-8.

Plaintiff Diego Arriaga Guzman testified he had worked for Candy Brand for four (4) years. Exhibit "V", Deposition of Diego Arriaga Guzman, page 13, lines 16-18. Although Plaintiff Arriaga testified he had seen Lisenbey around the packing shed, he admitted he never had any conversations with Lisenbey. Plaintiff Arriaga also testified he did not know what Lisenbey's job responsibilities were or whether Lisenbey controlled Plaintiff Arriaga's work schedule, rate of pay and/or employment records. Exhibit "W", Deposition of Diego Arriaga Guzman, page 76, lines 23-25, page 77, lines 1-13.

Plaintiff Jose Dolores Ramirez Reyes testified he worked for Candy Brand for five (5) years. During those five years, Plaintiff Ramirez testified he saw Lisenbey "very few times." Exhibit "X", Deposition of Jose Dolores Ramirez Reyes, page 25, lines 23-25. Plaintiff Ramirez testified he never had any conversations, either directly or through an interpreter, with Lisenbey. Exhibit "Y", Deposition of Jose Dolores Ramirez Reyes, page 26, lines 6-10. He testified Lisenbey had never given him instructions to do anything. Exhibit "Z", Deposition of Jose Dolores Ramirez Reyes, page 81, lines 24-25, page 82, lines 1-3. Plaintiff Ramirez also testified he did not know what Lisenbey's job responsibilities were. Exhibit "AA", Deposition of Jose Dolores Ramirez Reyes, page 82, lines 18-21. Plaintiff Ramirez did testify Lisenbey may have had the authority to control his work schedule, but when asked why he believed that, Plaintiff

Ramirez testified he thought that because co-workers had told him "[Lisenbey was] probably the owner." Exhibit "BB", Deposition of Jose Dolores Ramirez Reyes, page 84, lines 9-12. When asked more specifically about Lisenbey's *alleged* ownership or control over the workers, Plaintiff Ramirez testified Lisenbey had never told him when to come to work, never told him when he could leave and that he had never seen Lisenbey fire any employees at Candy Brand. Exhibit "CC", Deposition of Jose Dolores Ramirez Reyes, page 85, lines 9-17. Despite the "rumors" about Lisenbey's ownership of Candy Brand, it is clear that Lisenbey did not have any ownership interest in the company. See a true and correct copy of the affidavit of Brooks Lisenbey at Exhibit "H."

Plaintiff's counsel continued to take the deposition of the Plaintiffs in El Dorado, Arkansas, and those depositions reinforced that Brooks Lisenbey was not an employer under the FLSA. For instance, Jacqulyn Ware, testified she had worked in the packing sheds at Candy Brand, but didn't know Brooks Lisenbey and therefore, was not seeking damages from him.

Q. Will you be asking the Jury that you're entitled to money from Brooks Lisenbey? Yes or No?

A. No.

Q. Is that because you don't know him?

A. Yes.

Q. And were you in the packing shed in 2007?

A. Yes.

Exhibit "DD", Deposition of Jacqulyon Ware, Page 43, lines 8-19.

Plaintiffs' counsel also took the deposition of Margarita Eloisa Plasencia who also worked in the packing shed. She also testified that she did not know Brooks Lisenbey. Exhibit

"EE", Page 59, line 25; Page 60, line 1.  As analyzed above, Plaintiffs' testimony, ironically, further supports and strengthens Lisenbey's Motion for Summary Judgment and assertion that he never possessed nor exerted any operational control over any of the H2-A workers in this matter. This fact was also confirmed by Kristi Clanton.

Kristi Clanton handled payroll for Candy Brand at all times relevant, and according to her, Lisenbey did not have operational control at Candy Brand.  For instance, Ms. Clanton testified Randy Clanton Sr. and Charles Searcy were her supervisors.  Exhibit "FF", Clanton Deposition, pg. 15, lines 1-5; lines 17-18.  She also indicated Randy Clanton and Charles Searcy were the individuals who had the authority: (1) to set wage rates for packing shed workers; Exhibit "GG" Clanton Deposition, pg. 35, lines 6-9; (2) to reimburse workers for fees;  Exhibit "HH", Clanton Deposition, pg. 101, lines 21-24;  (3) and that all payroll checks were processed from Searcy's office.  Exhibit "II", Clanton Deposition, pg. 109, lines 9-12. Ms. Clanton also testified Charles Searcy would be the one who decided to pay the packing shed workers on an hourly basis instead of per day basis.  Exhibit "JJ", Clanton Deposition, pg. 149, lines 12-19.

### a. Brooks Lisenbey had no operational control over the Class I farm workers and therefore cannot be liable under the act.

Plaintiffs allege Defendant Brooks Lisenbey was an employer for the Class I farm workers and violated minimum wage standards for failing to pay overtime and other fees to the those workers.  However, as analyzed above and within this section, the Plaintiffs have failed to create a genuine issue of material fact on these claims.

For instance, Plaintiffs deposed separate Defendant Randy Clanton who owns one-hundred (100) percent of Randy Clanton Farms, Inc. which in turn, owns one-half of Candy Brand.  Exhibit "KK", Randy Clanton's Deposition, Page 15, lines 24-25, lines 9-12.  When

asked who was involved in the decision to apply for and get H2-A workers for Candy Brand, Randy Clanton indicated he was in charge of the farming operation and had some input and Charles Searcy was "the" managing partner. Exhibit "LL", Randy Clanton's Deposition, Page 22, lines 22-25. When asked about Mr. Lisenbey's involvement with Candy Brand, Mr. Clanton stated that "Brooks basically handled the sales in the operation...he bought and sold [produce]" Exhibit "MM", Randy Clanton's Deposition, Page 23, lines 9-12. Mr. Clanton confirmed his testimony about Mr. Lisenbey's lack of operational control over the Plaintiffs in his attached affidavits. Exhibit "I" and Exhibit "J".

Charles Searcy also confirmed Randy Clanton was the person responsible for the farming operations of Candy Brand and responsible for hiring the field supervisors. Exhibit "NN", Charles Searcy Deposition, page 61; lines 1-8, lines 16-20, page 73, lines 9-12, page 74, lines 11-19. Defendant Searcy also explained that it would have been Randy Clanton who determined how the field supervisors would be paid. Exhibit "OO", Charles Searcy Deposition, Page 73, lines 9-12; Page 74, lines 15-19. And those field supervisors would be responsible for running the field crews which included deciding what time they would get started with work, what time they finished and whether they would take breaks. Exhibit "PP", Charles Searcy Deposition, Page 73, lines 15-25, Page 74, line 1.

Dale McGinnis owns land which Candy Brand used as part of its farming operations. Dale McGinnis testified during the 2003 to 2007 tomato season, he rarely had contact with Brooks Lisenbey and if he did, it was to ask him how sales were going. Dale McGinnis also testified that he believed Brooks was just in charge of sales. Exhibit "QQ", Dale McGinnis Deposition, Page 212, lines 1-6. When asked if Brooks Lisenbey had any involvement with the

farming operation, Dale McGinnis testified that Brooks was a salesman and "he wasn't a farmer." Exhibit "RR", Dale McGinnis Deposition, Page 216, lines 8-10.

Dan Bremer's deposition was also taken in this matter. Dan Bremer owns AgWorks, a labor consulting company based out of Georgia. Dan Bremer worked with Candy Brand and specifically, Randy Clanton, in obtaining H-2A visas. Exhibit "SS", Page 8, lines 3-24. Dan Bremer testified that he did not know Brooks Lisenbey and had never spoken with him before. Exhibit "TT", Page 13, lines 14-24.

As established above, Defendant Brooks Lisenbey was not the employer of the Class I farm workers and therefore, entitled to summary judgment as to the Class I farm workers.

**b. Brooks Lisenbey had no operational control over the Class II shed workers and therefore cannot be liable under the act.**

Defendant Charles Searcy was deposed and questioned about his role as the managing member of Candy Brand between 2003 and 2007. Defendant Searcy testified that, "I would guess, ultimately, I was responsible for everything." Exhibit "UU", Charles Searcy Deposition, page 60, lines 16-17. Charles Searcy also indicated he was the responsible person at the top of Candy Brand, including payroll. Exhibit "VV", Charles Searcy Deposition, Page 61, lines 12-15; page 65, lines 19-25; Page 66, lines 1-8. Charles was also the sole individual who signed the Visa applications, signed paychecks, employee contracts and would supervise the Arkansas Tomato Shipper supervisors in the packing shed.

As analyzed above, Brooks Lisenbey did not have any operational control over the packing shed workers. Therefore, any claim regarding the Class II shed workers must be dismissed as a matter of law.

14

The Eighth Circuit Court of Appeals has held the following factors to be determinative as to whether an individual is an employer for FLSA purposes.  A court must determine if an individual had (1) control of the hiring and firing of employees, (2) control of the manner in which work was performed, and (3) control over the employees' wages. Wirtz v. Pure Ice Company, 322 F.2d 259 (8th Cir. 1963); Fruco Const. Co. v. McClelland, 192 F.2d 241 (8th Cir. 1951); Dole v. Continental Cuisine, Inc., 751 F. Supp. 799, 802-803 (E.D. Ark. 1990).

In the case at bar, there is no evidence Lisenbey displayed any (1) control of hiring and firing the Plaintiffs; (2) control of the manner in which work was performed by the Plaintiffs, *and* (3) could set or determine the Plaintiffs' wages.  Instead, all the evidence indicates Lisenbey neither possessed nor exerted *any* type of control over the Plaintiffs.  Even if he had the authority to do so, and he did not, courts have required FLSA Plaintiffs to show the Defendant *actually displayed* the control over the employees.  Patel, 803 F.2d 632, 637-38 (11th Cir. 1986).  Here, the Plaintiffs can do neither.

In determining whether an individual is an "employer" under the FLSA, some circuits have looked to see if the individual had ownership of any of the property where the work occurred or whether the individual had any investments or equipment at the facilities being used at the work site.  Here, the packing shed where the tomatoes were processed was owned by Arkansas Tomato Shippers and the land where the tomatoes were grown was owned by Randy Clanton Farms, Inc.  Exhibit "WW", Charles Searcy Deposition, Page 27, lines 1-13; see also Randy Clanton's Motion for Summary Judgment.  There is no evidence that Brooks Lisenbey owned any interest in Candy Brand, Randy Clanton Farms, Inc., or the equipment owned by either.  Again, Brooks Lisenbey was an employee of McKinstry Trading where he bought and

15

sold tomatoes.  For good reason, McKinstry Trading is not a party to this lawsuit and because

there are no genuine issues of material fact neither should Brooks Lisenbey.

## III.  BREACH OF CONTRACT

The Plaintiffs have also brought a breach of contract claim against Brooks Lisenbey and

other Defendants.  The law of contract is clear in Arkansas.

Except for the personal liability for acts or omissions of those providing professional service as
set forth in § 4-32-308, a person who is a member, manager, agent or employee of a limited
liability company is not liable for a debt, obligation, or liability of the limited liability company,
whether arising in contract, tort, or otherwise or for the acts or omissions of any other member,
manager, agent, or employee of the limited liability company. Ark. Code Ann. § 4-32-304.
[Emphasis Supplied]

Although the Plaintiffs' wage and overtime claims are brought pursuant to the FLSA, the

Plaintiffs' breach of contract claim is a state contract claim and governed by Ark. Code Ann. § 4-

32-308.  As an employee of McKinstry Trading, Brooks Lisenbey did not sign or authorize

Charles Searcy to sign any contracts with Plaintiffs.  This is undisputed.

The contracts at issue involve Candy Brand, LLC and Charles Searcy who entered into

the contracts.  Based on § 4-32-304 and well established Arkansas law, the Plaintiff's breach of

contract claims against Brooks Lisenbey should be dismissed as a matter of law.

## IV.  CONCLUSION

Plaintiffs have failed to establish any genuine issues of material fact as to whether Brooks

Lisenbey was an employer under the FLSA or entered into any contracts with the Plaintiffs.  As

illustrated by the depositions of Brooks Lisenbey, Randy Clanton, Charles Searcy and the

Plaintiffs themselves, as well as the sworn affidavits of Charles Searcy and Randy Clanton,

Brooks Lisenbey was not an employer under the FLSA and therefore, not liable for any supposed

violation thereof.  There is also no evidence that Lisenbey entered into an employment contract

with any Plaintiff in this matter.  As a result, all of Plaintiffs' claims against Defendant Brooks

Lisenbey should be dismissed as a matter of law.

Respectfully submitted,

/s/ Charles Darwin "Skip" Davidson
Attorney for Defendant Brooks Lisenbey
The Davidson Law Firm, Ltd.
724 Garland Street
P.O. Box 1300
Little Rock, Arkansas 72203
Phone:     (501) 374-9977
Facsimile: (501) 374-5917
Email: skipd@dlf-ar.com

## CERTIFICATE OF SERVICE

I hereby verify that on August 2, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

James M. Knoepp
Southern Poverty Law Center
233 Peachtree Street, NE., Ste. 2150
Atlanta, GA 30303

Daniel Werner
Southern Poverty Law Center
233 Peachtree Street, NE., Ste. 2150
Atlanta, GA 30303

Michelle Lapointe
Southern Poverty Law Center
233 Peachtree Street, NE., Ste. 2150
Atlanta, GA 30303

Edward Tuddenham
228 W. 137th Street
New York, NY 10030

John L. Burnett
Lavey & Burnett
904 W. 2nd Street
Little Rock, AR 72201

Hani Hashem
Hashem Law Firm
P.O. Box 739
Monticello, AR 71657

F. Mattison Thomas, III
101 Main Street, Ste. D
El Dorado, AR 71730

                              /s/ Charles Darwin "Skip" Davidson