IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ROSALINO PEREZ-BENITES,
LUIS ALBERTO ASENCIO-VASQUEZ, and
PASCUAL NORIEGA-NARVAEZ,
on behalf of themselves and
all others similarly situated,                    PLAINTIFFS


v.                          No. 1:07-CV-1048


CANDY BRAND, LLC,
ARKANSAS TOMATO SHIPPERS, LLC,
CHARLES SEARCY, RANDY CLANTON, and
BROOKS LISENBEY,                                  DEFENDANTS


<u>**MEMORANDUM OPINION AND ORDER**</u>

Currently before the Court are five separate motions for summary judgment. All are ripe for consideration. The first is a Motion for Summary Judgment on behalf of Defendant Randy Clanton (Docs. 194-196), for which Plaintiffs filed a Response (Doc. 220-221) and Defendant Clanton filed a Reply (Doc. 224). The second is a Motion for Partial Summary Judgment on behalf of Defendants Candy Brand, LLC, Arkansas Tomato Shippers, LLC, and Charles Searcy (Docs. 197 and 201), for which Plaintiffs filed a Response (Doc. 225). The third is an Amended Motion for Summary Judgment on behalf of Defendant Brooks Lisenbey (Docs. 198-200), for which Plaintiffs filed a Response (Docs. 226-227). The fourth is Plaintiffs' Motion for Partial Summary Judgment Related to Violations of the Fair Labor Standards Act and H-2A Employment Contracts (Docs. 203-204, 207, 208-218), for which Defendants filed

Responses (Docs. 228-229, 231, 232-244), and Plaintiffs filed a Reply (Doc. 246). The fifth and final motion is Plaintiffs' Motion for Summary Judgment Related to Employer Status and Liability of Charles Searcy, Randy Clanton, Brooks Lisenbey, and Arkansas Tomato Shippers, LLC (Docs. 205-207, 208-218), for which Defendants filed Responses (Docs. 228, 230-231, 234-244), and Plaintiffs filed a Reply (Doc. 245).

As explained herein, the Court has made the following determinations:

Motion for Summary Judgment on behalf of Randy Clanton (Doc. 194) is **DENIED;**

Motion for Partial Summary Judgment on behalf of Defendants Candy Brand, LLC, Arkansas Tomato Shippers, LLC, and Charles Searcy (Doc. 197) is **DENIED;**

Amended Motion for Summary Judgment on behalf of Defendant Brooks Lisenbey (Doc. 198) is **DENIED;**

Plaintiffs' Motion for Partial Summary Judgment Related to Violations of the FLSA and H-2A Employment Contract (Doc. 203) is **GRANTED;** and

Plaintiffs' Motion for Summary Judgment Related to Employer Status and Liability of Charles Searcy, Randy Clanton, Brooks Lisenbey, and Arkansas Tomato Shippers, LLC (Doc. 205) is **GRANTED.**

## I. Background

Plaintiffs are Mexican nationals who were employed in the

Defendants' tomato farming and packing shed operations in and around Bradley County, Arkansas, pursuant to H-2A temporary guestworker visas. Defendants are Candy Brand, LLC, an Arkansas corporation formed by Defendant Arkansas Tomato Shippers, LLC ("ATS"), and Randy Clanton Farms, Inc. ATS is owned, in part, by Defendant Charles Searcy. Mr. Searcy served as managing member of both ATS and Candy Brand. ATS owned a tomato packing facility at Hermitage, Arkansas, which was leased to Candy Brand each year during the tomato harvest. Defendant Randy Clanton is the president and sole shareholder of Randy Clanton Farms, Inc., and a producer of tomatoes. Mr. Searcy and Mr. Clanton, along with Defendant Brooks Lisenbey formed the senior management team of Candy Brand between 2003 and 2007, sharing primary responsibility for managing the operations and jointly making decisions affecting the company. All three individual Defendants were involved in the day-to-day management of Candy Brand's tomato harvesting, packing, and selling operation.

Candy Brand contracted with two outside companies, AgWorks, Inc., in 2003 and International Labor Management Corporation (ILMC) from 2004 through 2007, to process the H-2A visa paperwork required to obtain Mexican workers to harvest and pack tomatoes in Arkansas. Ag Works and ILMC also served as Candy Brand's agents in their interactions with the U.S. Department of Labor ("DOL") regarding the H-2A guestworker program. Defendants did their own recruitment

and hiring of guestworkers, sending the names of Mexican nationals selected to AgWorks or ILMC, which in turn coordinated with Mexican firms to process prospective H-2A workers' visas, handle Consular interactions, and transport workers from Monterrey, Mexico, to Hermitage, Arkansas.[1]

During the period relevant to this litigation, Defendants were certified to employ approximately 1,800 H-2A workers. Plaintiffs bring claims on behalf of themselves and others similarly situated, alleging that Defendants failed to reimburse the H-2A workers during their first week of employment for costs the workers incurred for passports, visas, visa processing, transportation, and border crossing. Plaintiffs claim that Defendants' failure to reimburse the workers for these costs in the first work week reduced the workers' first weeks' earnings below the minimum wage requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the applicable Adverse Effect Wage Rate ("AEWR") mandated by the terms and conditions of the H-2A employment contracts.

Plaintiffs also allege that Defendants failed to pay overtime

---

[1]    The record reflects that in 2007, Defendant Candy Brand paid for and provided a bus for H-2A workers to travel from Monterrey to Hermitage; otherwise from 2003-2006, transportation to and from Monterrey was coordinated and made available to H-2A guestworkers through Mexican companies that were retained by Defendants, and Plaintiffs paid the cost of this transportation at the time of transport.

wages for work done in the tomato packing sheds when that work exceeded 40 hours per week.  Claims for overtime pay are made pursuant to the FLSA.

Finally, Plaintiffs allege that when H-2A workers completed 50% of their contract periods, the Defendants failed to provide them with adequate reimbursement for their travel expenses and subsistence costs in journeying from their hometowns in Mexico to the consular offices in Monterrey, and then to Hermitage, Arkansas, in violation of the H-2A contract.  Plaintiffs also allege that once the contract period ended, Defendants failed to reimburse Plaintiffs for travel back to Mexico and for subsistence costs for travel in violation of the contract.

Plaintiffs allege two separate claims for damages.  Count I includes all FLSA-based collective action claims for minimum wage deficiencies and for failure to pay overtime compensation to those working in the tomato packing sheds.  Count II includes all breach of employment contract claims based on the H-2A contracts, as embodied in the relevant clearance orders.  The Count II claims arise from Defendants allegedly failing to pay the AEWR in the first work week as mandated by the DOL for H-2A workers, failing to comply with the minimum wage and overtime provisions of the FLSA, as required by the contracts, failing to keep accurate and adequate records with respect to the workers' earnings, and failing to furnish workers with accurate hours and earnings statements.

On October 31, 2008, the Court granted preliminary certification of Plaintiffs' Count I FLSA claims for minimum wage and overtime violations. The Court certified an opt-in class for the Count I claims pursuant to 29 U.S.C. § 216 (b). (Doc. 66) There are 97 individuals who consented to participate in this opt-in class.

On March 23, 2010, the Court certified two Rule 23 (b)(3) classes seeking relief for the Count II breach of contract claims based on the H-2A contracts. The two Rule 23 classes consist of: (1) all non-supervisory workers employed by Defendants at any time between 2003 and the date of judgment in this matter who were employed pursuant to H-2A temporary work visas, and (2) all non-supervisory workers employed in the Defendants' packing shed operations at any time between 2003 and the date of judgment in this matter --irrespective of visa status-- who did not receive overtime pay during work weeks when they worked more than forty (40) hours. (Doc. 174)

Shortly after this litigation was initiated in the summer of 2007, the decision was made to cease Candy Brand's operations in the tomato farming business. A decision was also made to cease ATS's involvement in the tomato farming business and sell off ATS's assets. Therefore, as of the date of this order, both Defendant Candy Brand and Defendant ATS are not conducting tomato related business, though they remain viable limited liability companies.

6

The various motions for summary judgment revolve around the same few issues of both fact and law.  The individual Defendants raise the issue of whether they are "employers" pursuant to the FLSA and H-2A contracts, whether the Arkansas LLC Act or any other corporations law provision would shield the individual Defendants from liability for acts committed by the LLC Defendants, and whether the "agriculture exemption" applies to Count I opt-in packing shed workers and Count II, Class (2) packing shed workers seeking overtime pay.[2]

Defendant Clanton's Motion for Partial Summary Judgment (Docs. 194-196) asks that the Court limit his FLSA liability to only those Plaintiffs who worked in the tomato fields, not any who worked in the packing shed.  Mr. Clanton argues that he was not an "employer," as defined by the FLSA, of the packing shed workers, because he did not directly supervise them.  He also seeks immunity from Plaintiffs' H-2A contract claims pursuant to the Arkansas LLC Act (A.C.A. 4-32-304), which limits liability for breach of contract to the LLC itself, and not to the individual members of the LLC.

---

[2]

Defendants also question whether the five-year statute of limitations on contracts is applicable in light of the fact that the FLSA has a different statute of limitations.  Defendants' argument on this point was ruled upon in a previous order.  The Court held that the FLSA does not provide an exclusive remedy for violations of its provisions (Doc. 173).  Plaintiffs' breach of contract claims are not preempted by the FLSA.

Defendant Lisenbey's Amended Motion for Summary Judgment (Docs. 198-200) also argues that he was not an FLSA "employer" of any of the Plaintiffs, whether working in the fields or the packing sheds. Instead, Mr. Lisenbey asserts that he was merely the buyer and seller of produce for his employer, Mckinstry Trading. Mr. Lisenbey also argues that he was not an "employer" under the H-2A contract, and even if he were, the Arkansas LLC Act would shield him from liability.

Defendants Candy Brand, ATS, and Searcy assert in their Motion for Partial Summary Judgment (Docs. 197 and 201) that the Plaintiff class members who were packing shed workers are not entitled to overtime pay under the FLSA because Candy Brand qualifies for the "agriculture exemption" for its packing shed activities. Defendant Searcy maintains that he cannot be sued individually for H-2A breach of contract claims, due to protections provided by the corporate/LLC structure. Moreover, these Defendants argue that the statute of limitations of the FLSA should control over the statute of limitations governing the H-2A contracts, and thus Plaintiffs should not recover on the five year statute of limitations for their breach of contract claims.

Plaintiffs move for summary judgment on two issues, both of which are also raised by Defendants in their Motions for Summary Judgment. First, Plaintiffs argue that individual Defendants Clanton, Lisenbey, and Searcy, as well as Defendant ATS are all

"employers" along with Candy Brand with respect to all Plaintiffs, whether field workers or shed workers, and with respect to both FLSA claims and H-2A contract claims.[3] (Docs. 205-206). Second, Plaintiffs move for Partial Summary Judgment with respect to whether Defendants' failure to adequately reimburse Plaintiffs during their first work weeks for expenses incurred for passports, visas, visa processing, border fees, and transportation expenses violated the minimum wage provisions of the FLSA and the H-2A employment contracts; whether Plaintiffs were properly reimbursed at both the 50% and 100% points of their H-2A work contracts; whether Defendants are entitled to the overtime exemption for agriculture work for those Plaintiffs working in the packing sheds; and whether Plaintiffs are entitled to a three-year statute of limitations on their FLSA claims and to liquidated damages. (Docs. 203-204).

The Court will address the arguments and claims made in all five summary judgment motions in order to determine if a genuine issue of material fact exists regarding:  1) whether Defendants are considered "employers" pursuant to the FLSA and the H-2A contracts; 2) whether Defendants are liable for overtime pay; 3) whether Plaintiffs are entitled to reimbursement for certain expenses and how that reimbursement would affect minimum wage/AEWR

---

[3]    The parties apparently agree that Defendant Candy Brand is an "employer" under the FLSA and H-2A contract definitions.

wage rates for work done by Plaintiffs; 4) whether Plaintiffs'
claims are affected by statute of limitations questions; and 5)
whether Plaintiffs are entitled to liquidated damages for their
FLSA claims.

## II.  Standard of Review

In determining whether summary judgment is appropriate, the
moving party bears the burden of establishing both the absence of
a genuine issue of material fact and that it is entitled to
judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106
S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Nat'l. Bank of Commerce of El
Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).  The
Court must review the facts in a light most favorable to the party
opposing a motion for summary judgment and give that party the
benefit of any inferences that logically can be drawn from those
facts. *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212-13 (8th Cir.
1998) *(*citing *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.
1983).  In order for there to be a genuine issue of material fact,
the non-moving party must produce evidence "such that a reasonable
jury could return a verdict for the nonmoving party." *Allison v.
Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994) (quoting
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))*.*

Once the moving party demonstrates that the record does not
disclose a genuine dispute on a material fact, the non-moving party

may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998)(citing *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir. 1981)). Furthermore, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996)(quoting *Crain v. Bd. of Police Comm'rs,* 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

## III. Discussion

### A.   Employer Status of Defendants Clanton, Lisenbey, Searcy, and ATS

#### 1.   Analysis of the Law on Employer Status

##### a.   FLSA and H-2A Contract Definitions

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . ." 29 U.S.C. § 203 (d). The FLSA further defines an "employee" as "any individual employed by an employer," (*id.* at § 203 (e)(1)) and "employ" as "to suffer or permit to work" (*id.* at § 203 (g)). There may be multiple simultaneous employers under the FLSA. *Corley v. Carco Capital Corp.*, 2006 WL 1889563 (W.D. Ark. July 10, 2006)(citing *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002); *Brown v. L&P Industries, LLC*, 2005 WL 3503637 (E.D. Ark.

Dec. 21, 2005); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1987).

The federal regulations defining the employer/employee relationship for temporary employment of foreign workers in the United States are nearly identical to the statutory definitions found in the FLSA. For the 2003-2007 time period pertaining to Plaintiffs' claims, Title 20 of the Code of Federal Regulations, section 655.100 (b) defines an H-2A guestworker "employer" as one who "suffers or permits" a person to work.[4] Such an employer is characterized by his ability to "hire, pay, fire, supervise or otherwise control the work of any such employee." *Id.*

The guestworker program regulations also contemplate liability for joint employers: "[a]n association of employers. . . shall be considered as a joint employer with an employer member if it shares with the employer member one or more of the definitional indicia." *Id.*; *see also Martinez-Bautista v. D&S Produce*, 447 F.Supp.2d. 954, 961 (E.D. Ark. 2006); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, (5th Cir. 1985)(labor contractor that petitioned in its name for H-2 guestworkers and individual growers who used H-2 workers' services were joint employers and therefore both responsible for violations of H-2 regulations); *Hernandez v.*

---

[4]    The regulations governing the H-2A program in effect during the period relevant to this lawsuit (2003-2007) are from 1987. All citations to the Code of Federal Regulations in this Memorandum are from the 1987 regulations.

*Two Brothers Farm, LLC*, 579 F.Supp.2d 1379, 1383 (S.D. Fla. 2008) (claims for breach of the H-2A employment contract may be brought against individuals who meet the definition of "employer" under the H-2A regulations).

Recovery is possible against any Defendants found to be "employers" for both FLSA violations and breaches of the H-2A employment contracts as embodied in the relevant work clearance orders, which were virtually identical for all potential class members between 2003 and 2007.

### b.   LLC Act Immunity for Corporate Officers

Defendants Clanton, Lisenbey, and Searcy argue that Candy Brand's corporate structure should shield them from individual liability.  They cite the Arkansas LLC Act's shielding provisions for this proposition of law.  A.C.A. § 4-32-304.  The Arkansas LLC Act limits liability for acts committed by the LLC to the corporation itself, and not to the individual members or officers of the LLC.  Defendants Candy Brand, ATS, and Charles Searcy in their Amended Motion for Partial Summary Judgment (Doc. 197) cite general principles of corporations law, as well as supporting Arkansas cases, in urging the Court to find that "[i]t is axiomatic that shareholders, officers, or employees of a corporate entity are not a proper party relative to a breach of contract claim against the corporate entity. . . Generally, individual defendants would not even be permitted to defend in their individual capacity for

13

breach of contract claims against a corporate entity." (Doc. 197, p. 12.)

Defendants' arguments on this issue are unpersuasive. The Supremacy Clause of the U.S. Constitution trumps state law on the issue of liability and immunity for breach of contract. *See* U.S. Const., Art. VI, Cl. 2; Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 369 (1986) ("[A] federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation."); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 613 (1979)("[E]ven though th[e] [Supremacy] Clause is not a source of any federal rights, it does 'secure' federal rights by according them priority whenever they come in conflict with state law. In that sense all federal rights, whether created by treaty, by statute, or by regulation, are 'secured' by the Supremacy Clause.")

In our instant case, the DOL, through the authority delegated it by Congress, enacted regulations governing participation in the federal H-2A guestworker program. As part of those regulations, an enforceable contract was made between H-2A workers and any individuals or entities that fall within the DOL's definition of "employer." The definition of "employer" in the H-2A contract setting is expansive, just as it is under the FLSA's definition. The federal government, when enacting the legislation governing how and whether U.S. employers may petition for foreign workers to

14

assist with temporary, seasonal work, contemplated that such an "employer" with the ability to "hire, pay, fire, supervise or otherwise control the work of any such employee" would be required to compensate H-2A workers at a rate not less than the federal minimum wage, the prevailing wage rate in the area, or the "Adverse Effect Wage Rate" ("AEWR"), whichever is higher. *See* 20 C.F.R. § 655.102 (b)(9). The AEWR is the minimum wage rate that the DOL determines is necessary to ensure that wages of similarly-situated domestic workers will not be adversely affected by the employment of H-2A workers. 20 C.F.R. § 655.100 (b).

Defendants cannot avail themselves of either common law or state contract law provisions as a shield from liability for a federally-mandated obligation to pay H-2A workers the rate that is necessary to maintain domestic wage parity. If Defendants are "employers" pursuant to the federal regulations governing the terms of the H-2A guestworker contracts, then they are liable for any breaches of those contracts.

Though there is little guidance in the case law of the Eighth Circuit on the individual liability of corporate officers and shareholders in FLSA and H-2A contract violations, the few cases that have been decided bear out the Court's holding. A corporate officer with operational control of the corporation's day-to-day functions is an employer within the meaning of the FLSA. In *Wirtz v. Pure Ice Co., Inc.*, 322 F.2d 259, 262-63 (8th Cir 1963), the

controlling stockholder of a corporation was not deemed an "employer" under the FLSA, but the Court observed that such an individual <u>would be</u> an employer if he owned stock, had the authority to manage and direct the business, and could hire and fire employees. An injunction pursuant to an FLSA enforcement action against a corporate employer was upheld on appeal in *Chambers Construction Co. v. Mitchell,* 233 F.2d 717, 724 (8th Cir. 1956), where the Court found that the president and general manager of a corporation "was engaged in the active management of the affairs of the corporation, although he was 'shown not to have assumed any special obligation individually to pay the wages or salaries of Chambers Construction Company's employees. . .'"

More recently, in *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002), the Eighth Circuit affirmed that "individual liability does exist under the FLSA" (citing *Rockney v. Blohorn*, 877 F.2d 637 (8th Cir. 1989), which compares the definition of "employer" under ERISA to the same definition under the FLSA).

District courts in Arkansas have applied the Eighth Circuit's general guidance on employer liability for FLSA violations. In *Corley v. Carco Capital Corp.*, 2006 WL 1889563 (W.D. Ark. July 10, 2006), found joint liability was found under the FLSA for a defendant company that held 100% of the stock in the company that was plaintiffs' listed employer. The individual defendant who was chairman of the board, a shareholder, had supervisory authority

16

over employees, and had authority to set, alter, and terminate plaintiffs' salaries, was also found to be a joint employer and personally liable for plaintiffs' damages. *Id.* at *2. Similarly, in *Brown v. L&P Industries, LLC*, 2005 WL 3503637 (E.D. Ark. Dec. 21, 2005), the Court found an individual defendant who was the owner of an LLC liable as a joint employer under the FLSA, even though the individual lived out of state. *Id.* at *12-13. The Court found that the defendant was an "employer" pursuant to the FLSA and was personally liable for plaintiff's unpaid overtime compensation and liquidated damages. The Court considered that the individual defendant "maintained telephone contact with L&P personnel on a daily basis. . . held final authority over all of L&P's functions, including decisions about employee compensation, and he made the final decision to terminate Brown [the plaintiff]." For all of these reasons, the individual defendant in that case was found to be an employer under the FLSA and could not hide behind the LLC's corporate structure to avoid personal liability.

Other circuits have found that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1987); *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991)("To be classified as an employer, it is not required that a party have exclusive control of

17

a corporation's day-to-day functions.  The party need only have operational control of significant aspects of the corporation's day-to-day functions.").  A determination of whether an individual is an employer within the meaning of the FLSA is not governed by formalistic labels or a common law notion of the employment relationship.  *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983).  Rather, the focus is on the totality or the circumstances of whether the individual in question is sufficiently involved in the day-to-day operations of the corporation.  *Id.* at 194-195.  With this standard in mind, the Court will apply the law on employer liability to the facts of the case.

### 2.  Application of the Law to the Undisputed Facts

#### a.  Defendant Clanton

Defendant Randy Clanton asks the Court to find that he was an employer of Plaintiff field workers only, not packing shed workers. Clanton argues that he was not a member of the Candy Brand, LLC, entity, and that he did not exercise the necessary control over the packing shed employees to subject him to personal liability for their overtime claims.  (Doc. 195, p. 3).

The Court disagrees.  To be an "employer" of H-2A workers pursuant to the H-2A contract, Mr. Clanton need only have the ability to "hire, pay, fire, supervise or otherwise control the work of any such employee."  20 C.F.R. § 655.102 (b)(9).  This standard is easily met.  There is no precedent for parsing out the

workers into those who spent most of their time in the fields and those who spent most of their time in the packing shed. Mr. Clanton clearly supervised or controlled the work of H-2A employees, and that fact meets the requirements for purposes of finding employer liability.

Furthermore, an examination of the deposition testimony reveals that Mr. Clanton was not merely directing field workers exclusively; he was actively participating in the hiring, firing, and management of the business as a whole, of which an integral part was the H-2A workers' field and packing shed labor. Plaintiffs have painstakingly cited to multiple pages of deposition testimony taken in this case. Those facts evidence Mr. Clanton's employer status both under the H-2A contract provisions and the FLSA. An individual such as Mr. Clanton who has a significant ownership interest and operational control of major aspects of the corporation's day-to-day functions meets the "active management" test for FLSA employer liability, as described in *Chambers Construction Co. v. Mitchell,* 233 F.2d 717, 724 (8th Cir. 1956), and explained further in *Brown v. L&P Industries, LLC*, 2005 WL 3503637 (E.D. Ark. Dec. 21, 2005).

Below are some of the undisputed facts that establish Mr. Clanton's status as employer, both under the H-2A contracts and the FLSA, and subject him to joint and several liability:

(1) Clanton was president and 100% shareholder of Randy

19

Clanton Farms, Inc., and through that ownership, a partner and owner of Defendant Candy Brand, LLC. Candy Brand/ATS/Searcy Dep. Vol. I at 37, 39, 111; R. Clanton Dep. at 15-16.

(2)   Clanton had the authority to hire and fire Candy Brand employees, react to labor costs, modify or recommend changes to Candy Brand's work rules, and serve as a contact for workers seeking to return to Candy Brand the following year.  K. Clanton Dep. at 35-36, 125-126; R. Clanton Dep. at 89-90, 134-135, 209-210; Candy Brand/ATS/Searcy Dep. Vol I at 58-59, 102-103, 181-184.

(3)   Clanton had the authority to set wages for both field and packing shed workers.  K. Clanton Dep. at 35, 149; Candy Brand/ATS/Searcy Dep. Vol II at 33-34 and Vol. I at 89-90.

(4)   Clanton hired and trained field supervisors and determined when field crews would start the work day.  R. Clanton Dep. at 137-139; Candy Brand/ATS/Searcy Dep. Vol. II at 33-34, 54-56, 71-74, 89-90.

(5)   Clanton visited the packing shed daily and supervised the work there.  R. Clanton Dep. at 146; M. Martinez Morales Dep. at 26-27; B. Burboa Leyva Dep. at 27; D. Arriaga Guzman Dep. at 22.

(6)   Clanton had the authority to request that individual H-2A

workers be added to Candy Brand's list of workers to cross from Mexico to the U.S., make the determinations as to how many field and packing shed workers Candy Brand needed to request on its H-2A worker applications, and directed how all H-2A worker crossings should be coordinated so that workers would arrive in Arkansas on particular dates. Candy Brand/ATS/Searcy Dep. Vol. I at 95-96, 108-109, 144-145, 176; Docs. 209-7 and 209-19; R. Clanton Dep. at 32-34, 64-65.

(7) Clanton had the authority to sign Candy Brand employee payroll checks. Candy Brand/ATS/Searcy Dep. Vol. I at 79-80.

(8) Clanton was aware that Candy Brand's non-reimbursement policy for visa and travel fees may not be in compliance with FLSA requirements, as he had discussed the relevant case law with Defendant Searcy. Candy Brand/ATS/Searcy Dep. Vol. I at 194-195.

For these and other reasons enumerated by Plaintiffs in their Brief (Doc. 245), there is no genuine issue of material fact that Defendant Clanton is an employer under both the H-2A contracts and the FLSA.

### b. Defendant Lisenbey

Defendant Brooks Lisenbey argues that he was neither employed by Candy Brand nor an owner of Candy Brand. However, as refuted

21

above, those two facts do not negate the fact that Defendant Lisenbey actively managed employees or had the authority to hire, fire, pay, supervise, or otherwise exert operational control over the business and the Plaintiff workers who bring this lawsuit.

It is undisputed that Defendant Lisenbey was an employee of his wife's company, Mckinstry Trading[5], and was tasked with the job of selling Candy Brand's tomatoes for McKinstry.  In his capacity as salesman of Candy Brand's inventory, Mr. Lisenbey was directly and substantially involved in the day-to-day management of Candy Brand.  Mr. Lisenbey's duties and responsibilities primarily included supervising the packing shed operations.  But Mr. Lisenbey was also generally involved with the hiring and supervision of H-2A workers for Candy Brand.  He traveled to Mexico on behalf of Candy Brand to learn about the process of hiring H-2A workers (B. Lisenbey Dep. at 114-118) and then went to Monterrey, Mexico, to visit with the Consulate there (B. Lisenbey Dep. at 123-124).  Far from the mere produce salesman Mr. Lisenbey makes himself out to be, he meets both the U.S. government's H-2A contract definition and the FLSA's definition of "employer."

---

[5]
       Mckinstry Trading was the community property by marriage of Mr. and Mrs. Lisenbey and was transferred to Mr. Lisenbey as part of his divorce proceedings.  Mckinstry Trading was one of the owners of ATS and Candy Brand.  ATS owned the packing shed facility that is discussed in the instant case, and Mr. Lisenbey purchased this packing facility outright on behalf of one of his other companies after this lawsuit was filed.

Below are some of the undisputed facts that establish Mr. Lisenbey's status as employer and subject him to joint and several liability:

(1) Candy Brand's interrogatory responses and other documents list Mr. Lisenbey as one of the three managers of the Candy Brand business and as the supervisor/manager of the packing shed operations. Docs 210-4 and 210-8; *see also* K. Clanton Dep. at 47-48.

(2) Lisenbey had the authority to hire and fire employees, including the supervisors of the H-2A workers, and could determine whether workers would be paid on an hourly basis or by a daily rate.  R. Clanton Dep. at 135-135, 279-280; K. Clanton Dep. at 35-36; B. Lisenbey Dep. at 81-82, 168-169.

(3) Lisenbey traveled to Monterrey, Mexico, on behalf of Candy Brand and informed Candy Brand's consular processing agent that he had hand selected and hired some of the Candy Brand H-2A workers. Rodriguez, Jr./Solstice Dep. at 33-38.

(4) Both Defendants Clanton and Searcy consulted with Lisenbey before determining how many field and packing shed workers would be requested on H-2A applications. R. Clanton Dep. at 32-34, 64-65; Candy Brand/ATS/Searcy Dep. Vol. I at 108-109, 144-145, 176; Doc 209-19.

(5)   Lisenbey disciplined Candy Brand workers he thought were doing a poor job (B. Lisenbey Dep. at 70-71), sent a memo to workers related to procedures for clocking in and out and threatened them with non-payment of wages for noncompliance with rules (Doc. 213-4), and made an announcement to Candy Brand employees about what fees they should and should not have to pay to become H-2A workers at Candy Brand (B. Lisenbey Dep. at 130-133).

(6)   Lisenbey was so intimately involved in the Candy Brand business that he signed an indemnification agreement with Defendants Searcy and Clanton, stating among other things that if money were paid to Candy Brand by the U.S. Department of Agriculture for the tomato crop years 2003-2007, the money would be split evenly between Lisenbey's company and Clanton's company. Doc. 207-1.

For these and other reasons enumerated by Plaintiffs in their Brief (Doc. 245), there is no genuine issue of material fact that Defendant Lisenbey is an employer under both the H-2A contracts and the FLSA.

### c.   Defendant Searcy

Mr. Searcy admits that he is an employer as defined by the FLSA (Doc. 243, ¶ 1).  However, he contends that each H-2A employment contract mandated by the DOL listed only Candy Brand as the employer, and thus Candy Brand is the only proper defendant

employer in an H-2A breach of contract action.

Plaintiffs correctly point out that because Mr. Searcy meets the definition of "employer" under the FLSA, he also meets the definition under the H-2A regulations.  As discussed herein, there is no prohibition against seeking damages for both FLSA claims and H-2A breach of contract claims.  Most district courts in the Eighth Circuit agree that the FLSA's savings clause, which allows states to enact stricter wage, hour, and child labor provisions than the federal government, indicates that the FLSA does not provide an exclusive remedy for its violations.  In fact, "it would seem that state law may offer an alternative legal basis for equal or more generous relief for the same alleged wrongs." *Cortez v. Neb. Beef, Inc.*, 2010 WL 604629 (D. Neb. Feb. 16, 2010).

Furthermore, the record reflects that the employer listed on the 2004-2006 contracts is in fact "Charles Searcy, Plant Manager." (Docs. 245-1, 245-2, 245-3).  The name "Candy Brand" does not appear  in the 2004 and 2005 contracts.  For these and other reasons, the evidence is such that there is no genuine issue of material fact that Defendant Searcy is an employer under both the H-2A contracts and the FLSA.

### d.   Defendant ATS

Defendant ATS is a joint employer along with Candy Brand. Candy Brand was owned by and under the control of ATS, and ATS employees supervised the Candy Brand packing shed workers (B.

Lisenbey Dep. at 73, 77-79, 87-90; Candy Brand/ATS/Searcy Dep. Vol. I at 48-49).  Defendant Searcy had the authority to sign both Candy Brand employee payroll checks and ATS employee payroll checks.  Mr. Searcy was the managing member of both Candy Brand and ATS, and he routinely dispensed with formalities in operating both entities. Specifically, the facts show that there was no formal process with respect to Candy Brand making draws against the ATS line of credit. If Candy Brand needed money, Mr. Searcy would write himself a check from one corporate account to the other (Candy Brand/ATS/Searcy Dep. Vol II at 319-320).  As ATS financed Candy Brand's operations, Mr. Searcy provided a personal guarantee for loans obtained by both ATS and Candy Brand.  In addition, Mr. Searcy negotiated the terms of the $2 million line of credit between ATS and Candy Brand on behalf of both entities (Candy Brand/ATS/Searcy Dep. Vol. II at 233-234).  Mr. Searcy was the person who made the decision to cease operating Candy Brand and to sell off the assets of ATS sometime in 2007 or 2008 (Candy Brand/ATS/Searcy Dep. Vol. II at 321-22).  In short, there is no distinction between Candy Brand and ATS: both companies are essentially Defendant Searcy, and admittedly so.

The economic ties between ATS and Candy Brand were such that the two companies met the standard concerning FLSA joint employment under 29 C.F.R. § 791.2 (b).  The regulation states: "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share

26

control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. . ." then a joint employment relationship exists. *Id.* *See Hearnsberger v. Gillespie*, 435 F.2d 926, 930-31 (8th Cir. 1970)(where individual defendant was the primary stockholder in separate corporate defendant, economic ties between the two entities meant that joint employment was "firmly sustained by the Act and by caselaw").

Furthermore, Candy Brand and ATS are an integrated enterprise pursuant to the four-factor test announced in *Sandoval v. American Building Maintenance Industries, Inc.*, 578 F.3d 787, 793-796 (8th Cir. 2009). The doctrine announced in *Sandoval* establishes a standard by which courts may essentially pierce the corporate veil for purposes of establishing employer liability in labor and employment law cases. This doctrine has been applied in the context of the FLSA (*see Pearson v. Component Tech. Corp.*, 247 F.3d 471, 486 (3d Cir. 2001) and other federal employment statutes to determine liability of a parent corporation for acts of its subsidiary. The test involves whether separately incorporated entities have (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Id.* No one factor is dispositive.

Applying the four *Sandoval* factors to Mr. Searcy's common ownership and management of ATS and Candy Brand, it is clear that all four factors are met, and ATS is liable to Plaintiffs as an employer pursuant to the H-2A contracts, whether under the integrated enterprise doctrine or pursuant to the plain language of 29 C.F.R. § 791.2 (b).

**B.   Overtime Exemption for Agriculture Work**

Defendants argue that they were not required to pay overtime wages to packing shed employees because that the work qualified for an agricultural exemption from FLSA overtime provisions.  29 U.S.C. § 213 (b)(12).[6]  Defendants are entitled to this exemption if they can show that the packing shed work was performed by a farmer as an incident to that farmer's farming operations.  The problem is that if that farmer packs produce grown by other farmers, he loses the exemption. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 766 n. 15 (1949)("[P]rocessing on a farm of commodities produced by other farmers is incidental to or in conjunction with the farming operations of the other farmers and not incidental to or in conjunction with the farming operation of the farmer on whose premises the processing is done.  Such processing is, therefore, not within the definition of agriculture."); *Marshall v. Gulf & Western Industries, Inc.*, 552 F.2d 124, 126 (5th Cir. 1977)("The

---

[6]      It is undisputed that packing shed workers often worked more than 40 hours per work week and were not paid overtime wages.

fact that tomatoes grown by independent farmers were processed by Gulf & Western prevents it from receiving the claimed [agricultural] exemption.")

The Court is persuaded that the packing shed workers employed by Defendants packed tomatoes grown by individuals and entities other than Candy Brand, including Dale McGinnis, Lowry Farms, Inc., A-W Produce, Inc., and others.  Defendants do not deny that their employees packed tomatoes grown by other farmers; however, Defendants counter that such outside produce was only *de minimis* to Defendants' overall operation (Doc. 232).  Defendant Searcy states in an affidavit that he believes that repacking outside tomatoes accounted for less than two percent of the packing shed production of Candy Brand as a whole.  This amount, he argues, is *de minimis*.

It is Defendants' burden to show they are entitled to the agricultural exemption. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 291 (1959); 29 C.F.R. § 780.2.  Defendants have failed to meet that burden.  Though Defendant Searcy's opinion is that the outside tomatoes were a very small percentage of total packing production, he provides no evidence to counter Plaintiffs' compelling showing that Candy Brand's federal tax returns reflect outside purchases of produce accounting for over 10% of Candy Brand's total operational expenses in 2006 and 2007 (Docs. 211-19 and 211-20).  Those outside purchases do not even include the tomatoes farmed by Dale McGinnis and A-W Produce.   Dale McGinnis's employee, Ascension Fonseca,

29

testified that he deferred to Mr. McGinnis regarding how and when to plant tomatoes on McGinnis's land, and Mr. McGinnis checked on tomato plant growth, applied fungicide, and loosened the soil in preparation for planting, among other farming tasks (Fonseca Dep. at 25, 31-36, 44-47, 59). Though Candy Brand's employees harvested Mr. McGinnis's tomatoes, the evidence shows that Candy Brand was not the exclusive farmer of the crop. In fact, Mr. McGinnis was paid by Candy Brand for tomatoes grown on land that Candy Brand leased from other persons. Docs. 209-35 and 209-36.

A-W's farms were in Texas, some 700 miles away from Candy Brand's Arkansas operations. A-W provided its own labor in growing the tomatoes. Though Defendant Clanton counseled A-W at times during the 2005 season, and Candy Brand shared some costs involved in growing the tomatoes that year, Candy Brand can best be described as an investor in A-W's tomato crop. When Candy Brand packed A-W's crop, Candy Brand was not the farmer of that crop for A-W was the farmer.

Candy Brand was on notice that it may be liable for overtime wages due to the fact that its packing shed workers packed tomatoes for several other growers. In 2003, AgWorks, Inc., which was Defendants' agent in their interactions with the DOL in applying for H-2A guestworkers, advised Candy Brand in writing that packing shed employees may be eligible for overtime pay (Doc. 207-4, p. 6). Defendants expressed in writing their legal concern over their

decision to not pay overtime wages to H-2A workers (Doc. 210-7).
Nevertheless, the facts show that Defendants failed to consult a
legal expert regarding overtime compensation and the agricultural
exemption, and Defendants apparently decided to take their chances
that the exemption would apply.  The Court holds that the exemption
does not apply, and Defendants are liable for any overtime
compensation owed to the Count I opt-in Plaintiffs who were
employed in the Defendants' packing shed and Count II, Class (2)
Plaintiffs who worked in the packing shed facilities.

## C.    Reimbursement of Plaintiffs' Expenses

### 1.    Analysis of the *Arriaga* Case

The U.S. Department of Labor recently affirmed that under the
FLSA, employers are obligated to reimburse travel and immigration-
related costs to temporary foreign guestsworkers if the costs reduce
the workers' wages below the federal minimum wage during the first
work week.  Doc. 213-11.  The DOL cited favorably to the 11th
Circuit case of *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d
1228 (11th Cir. 2002), in issuing its Field Assistance Bulletin in
2009, noting that "travel and immigration-related costs for workers
hired under the H-2B program are for the primary benefit of their
employers, and the employers therefore must reimburse the employees
for these costs in the first work week if the costs reduce the
employees' wages below the minimum wage." Field Assistance Bulletin
No. 2009-2 (Aug. 21, 2009).  This reasoning is not limited to the

H-2B context, as the DOL added that "[t]he same type of analysis . . . would have to be performed whenever an employee must travel for temporary employment from the point of hire to a distant worksite location." *Id.* at 9 n.3.

This Court agrees with other courts in concluding that the *Arriaga* decision is well-reasoned and correctly decided, and that Plaintiffs are entitled to reimbursement of the expenses they incurred to travel to the United States and work for Defendants. *See, e.g., Morante-Navarro v. T & Y Pine Straw, Inc.*, 350 F.3d 1163, 1166 n.2 (11th Cir. 2003)(H-2B guestworkers entitled to reimbursement); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F.Supp.2d 1295, 1315 (N.D. Ga. 2008)(H-2B guestworkers entitled to reimbursement); *Martinez-Bautista v. D&S Produce*, 447 F.Supp.2d 954, 963-64 (E.D. Ark. 2006)(H-2A guestworkers entitled to reimbursement); *De Luna-Guerrero v. North Carolina Grower's Ass'n*, 338 F.Supp.2d 649, 662 (E.D. N.C. 2004)(H-2A guestworkers entitled to reimbursement).

In *Arriaga*, the Eleventh Circuit addressed whether an employer must reimburse foreign H-2A guestworkers' visa and travel costs under the FLSA. The court ruled that the costs of H-2A guestworkers' visas and travel from their home country to the United States were incurred "for the primary benefit and convenience of their employer." *Arriaga*, 305 F.3d at 1242. In ruling that workers' international travel and guestworker visas

were not the same as board and lodging (which are not reimbursable costs), the Court emphasized that employees' visa and travel costs were "an inevitable and inescapable consequence" of the employer's hiring foreign guestworkers.  *Id.*  Because these costs inherent in the employer's choice of foreign employees, they were an "incident of and necessary to the employment," 29 C.F.R. § 531.32 (a).  Thus, the employers were obligated under the FLSA to reimburse the foreign workers if failure to do so would drop the workers' wages below the minimum wage.  *Arriaga*, 305 F.3d at 1242. An employer cannot escape its minimum wage obligations by requiring employees to pay directly for costs that it would be prohibited from deducting from their pay.  *Id.* at 1236.

Reimbursement of costs was appropriate during the workers' first work weeks.  The *Arriaga* court held that employees' travel and visa costs were not expenses they would have incurred normally in the course of life, but rather, like a work uniform or tools, were costs necessitated by the job itself.  *Id.* at 1243-44. Because these expenses arose pre-employment, reimbursement during the first work week would have been mandatory.  *Id.* at 1237.

It is important to make clear that *Arriaga*'s holding is based on the FLSA, not on H-2A regulations.  In applying the holding of *Arriaga* to the case at bar, it is evident that the pre-employment costs associated with H-2A workers' employment with Defendants should have been reimbursed during the first work weeks.  The

33

passport, visa processing, visa, transportation, and border crossing expenses that workers bore as a condition of their employment in Arkansas were not costs that would have arisen in the ordinary course of life. *See Arriaga*, 305 F.3d at 1243-44. Defendants knew that their H-2A workers bore substantial costs in obtaining visas to work in Arkansas. These costs included the fees that workers paid to Defendants' agents in Mexico who performed the critical service of processing visas smoothly and insuring that workers arrived in Arkansas during designated times. Moreover, Defendants were well aware of the pass-through costs that their H-2A workers bore personally in paying visa processing agents and passport, visa, and border crossing fees.

As early as March 2003, Defendants' agent AgWorks sent them a set of requirements associated with the employment of H-2A workers, including a summary of the *Arriaga* decision (Doc. 207-4, pp. 9-10). Defendants Searcy and Clanton discussed the implications of the *Arriaga* decision with one another, but without reading the opinion or consulting an attorney, they opted not to follow *Arriaga* and reimburse workers for pre-employment costs. Candy Brand/ATS/Searcy Dep. Vol. I at 194-95, 206-08. In addition, from as early as November 2005, Defendants' agent ILMC mailed Defendants several letters warning them of legal issues related to the failure to reimburse workers for visa and travel expenses (Docs. 207-12, 209-29, 209-30). These warnings were unavailing.

The Court finds that all Plaintiffs were entitled to reimbursement of these pre-employment costs during their first work weeks, and Defendants are liable for failing to do this.

### 2. Analysis of the FLSA Minimum Wage Law and the H-2A Contracts' AEWR Requirement

To participate in the H-2A guestworker program, employers file forms with the federal government that comply with federal regulations. 20 C.F.R. § 655.101 (b). These regulations establish the minimum benefits, wages, and working conditions that must be offered to employees and form the contracts between employers and employees. *See Arriaga*, 305 F.3d at 1233 n.5 ("clearance orders ultimately become the work contract between the employers and the farmworkers").

To ensure that the employment of H-2A workers did not adversely affect the wages and working conditions of U.S. workers, Defendants were obligated to pay the higher of the federal minimum wage, the prevailing wage, or the Adverse Effect Wage Rate ("AEWR") for each hour worked.[7] Payment of the AEWR is important for many reasons, not the least of which is protection of U.S. workers from facing unfair competition if employers were permitted to undercut wages by paying foreign workers a drastically reduced wage.

In addition to the requirement that Defendants pay the AEWR to

---

[7]
It is undisputed that in the instant case, the AEWR was the highest of the three wage rates listed.

H-2A workers, Defendants were also contractually obligated to "comply with applicable federal, State, and local employment related laws and regulations." 20 C.F.R. § 655.103 (b). The FLSA is one such law that the H-2A contracts incorporate. As a result, failure to pay the federal minimum wage, in addition to being a violation of the FLSA, also constitutes a breach of the H-2A contract.

It is undisputed that Defendants did not reimburse workers during the first work weeks for the passport, visa processing, visa, transportation, and border crossing expenses the workers incurred for Defendants' benefit. The legal effect of requiring employees to bear these costs is the same as if Defendants deducted these expenses from employees' wages. *Arriaga*, 305 F.3d at 1236. Failure to reimburse Plaintiffs for these expenses during their first work weeks effectively reduced Plaintiffs' wages below the AEWR in violation of the H-2A contracts. Defendants are liable for these deficiencies.

Moreover, the H-2A contracts require that travel and daily subsistence costs for workers' transportation to the place of employment be reimbursed at the 50% point of the contract. Defendants' own clearance order from 2003 (Doc. 210-22) states: "After fifty percent of the employment period is complete, the employer will reimburse the worker for reasonable cost of transportation and subsistence from the place of recruitment to the

36

grower's location." 20 C.F.R. § 655.102 (b)(5)(i)(requiring reimbursement for transportation and daily subsistence costs incurred from the place "from which the worker has come to work for the employer to the place of employment"). However, Defendants admit that they paid H-2A workers at the 50% point of their contracts a $100 flat payment for the costs of transportation and subsistence, regardless of the actual costs of transportation incurred by the workers, and ignored the daily subsistence rate set forth each year in the Federal Register.[8] Defendants' breached the H-2A contracts when they failed to pay full transportation and subsistence costs at the 50% point of the contracts.

Similarly, Defendants' breached the H-2A contracts when they failed to pay full transportation and subsistence costs at the end of the contract terms for reimbursement of travel from Arkansas back to Plaintiffs' homes in Mexico. The federal regulations regarding this requirement state that return transportation and costs of daily subsistence "from the place of employment to the place from which the worker . . . came to work for the employer" must be reimbursed at the end of the contract terms. 20 C.F.R. § 655.102 (b)(5)(ii). Defendants were obligated to pay for the H-2A workers' transportation each year from Hermitage, Arkansas, to

---

[8]
    Defendants' partial reimbursement of $100 for Plaintiffs'
initial travel costs at the 50% point of the contracts cannot
absolve Defendants from liability for minimum wage violations
incurred during the first work weeks of the contracts.

the workers' homes.   They were also required to pay daily subsistence costs for the workers' trips home.

**D.  Liquidated Damages and Three-Year Statute of Limitations for FLSA Claims**

Liquidated damages are not punitive, but rather are "intended in part to compensate employees for delay in payment of wages owed under the FLSA." *Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990)(citing *Brooks Savings Bank v. O'Neill*, 324 U.S. 697, 707 (1945)).   An award of liquidated damages is mandatory under 29 U.S.C. § 216 (b) absent an employer's showing of good faith and reasonable grounds for the belief that it was not in violation of the FLSA.   *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir. 1990).   If the employer fails to come forward with plain and substantial evidence to satisfy both the good faith and reasonableness requirements, the court must award liquidated damages.   *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984).   The employer's burden is "a difficult one, with double damages being the norm and single damages being the exception."   *Chao v. Barbeque Ventures*, 547 F.3d 938, 941 (8th Cir. 2008).

In this case, Defendants were aware of their obligation to pay packing shed workers overtime wages and to reimburse their H-2A employees' pre-employment expenses. Defendants' U.S. agents during the relevant time period, AgWorks and ILMC, assisted Defendants with the H-2A application process and in doing so alerted them to

the possibility of liability.  The DOL sent Defendants multiple letters, advising them of FLSA requirements related to reimbursement of expenses for H-2A workers.  Deposition testimony establishes that Defendants Searcy and Clanton were aware of the *Arriaga* decision and its implications, but they failed to obtain legal advice regarding their business's compliance with *Arriaga*'s requirements.  Defendants admit that packing shed workers were never given overtime pay.  This fact is undisputed.

Defendants admit that they did not reimburse Plaintiffs for passports, visas and visa processing, transportation, border crossing expenses, or transportation and subsistence costs after the first work week, in contravention of FLSA requirements announced in *Arriaga*.  They also admit that their policy and practice was to reimburse H-2A workers only $100 each for the costs of transportation from their homes in Mexico to the Defendants' workplace in Hermitage, Arkansas, regardless of the fact that the actual costs of transportation incurred by Plaintiffs exceeded $100.  Even though Defendants' agents AgWorks and ILMC provided Defendants with detailed instructions and worksheets describing how to properly calculate travel reimbursement under the H-2A regulations (including estimates for travel costs from various cities all over Mexico, not simply from the Consular offices in Monterrey), Defendants did not take into account Plaintiffs' actual costs for transportation and continued to reimburse them a flat

rate of $100 each after the 50% point of the contracts was completed.

After the completion of the contracts each year, it is undisputed that Defendants failed to reimburse Plaintiffs for transportation costs from Monterrey to class members' home cities in violation of the contract. The evidence is clear that Defendants also failed to pay any H-2A class member for the costs of daily subsistence during travel, whether at the 50% point or at the 100% point of the contract period, again in violation of the H-2A regulations. Though Defendant Searcy admitted in deposition to this failure to reimburse as "just a screw-up on our part," the poor judgment Defendants exhibited is striking.

Lack of knowledge is not enough to establish good faith. *Chao*, 574 F.3d at 941. It is "hard to mount a serious argument that an employer who has acted in reckless disregard of its FLSA obligations has nonetheless acted in good faith." *Jarrett v. ERC Props.*, 211 F.3d 1078, 1084 (8th Cir. 2000). In light of the evidence of Defendants' reckless disregard of the FLSA's requirements, the Count I opt-in Plaintiffs are entitled to an award of liquidated damages in an amount equal to the unpaid minimum and overtime wages they are due under the FLSA.

Regarding the statute of limitations applicable to FLSA claims, the statute extends the limitations period from two years to three years if Plaintiffs can prove that the Defendants'

40

violation of the Act was "willful." 29 U.S.C. § 255 (a). A "willful" violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The regulations interpreting the FLSA state that a violation shall be deemed "in reckless disregard . . . if the employer should have inquired further into whether its conduct was in compliance with the Act" and failed to do so. 29 C.F.R. § 578.3 (c)(3).

The Court finds that the Defendants acted in reckless disregard for the matter of whether their conduct was prohibited by the FLSA, and the three-year statue of limitations will apply to Plaintiffs' FLSA claims.[9]

## IV.  Conclusion

Motion for Summary Judgment on behalf of Randy Clanton (Doc. 194) is **DENIED;**

Motion for Partial Summary Judgment on behalf of Defendants Candy Brand, LLC, Arkansas Tomato Shippers, LLC, and Charles Searcy (Doc. 197) is **DENIED;**

---

[9] Defendants are subject to liability for Plaintiffs' breach of the H-2A contract for the full five years of the statute of limitations period for written instruments. There is nothing remarkable about a contract claim that relies on the FLSA and has a longer statute of limitations than the FLSA. As discussed above, Defendants are considered employers for the purposes of determining liability for violations of the FLSA and for breaches of the H-2A employment contracts.

Amended Motion for Summary Judgment on behalf of Defendant Brooks Lisenbey (Doc. 198) is **DENIED;**

Plaintiffs' Motion for Partial Summary Judgment Related to Violations of the FLSA and H-2A Employment Contract (Doc. 203) is **GRANTED;** and

Plaintiffs' Motion for Summary Judgment Related to Employer Status and Liability of Charles Searcy, Randy Clanton, Brooks Lisenbey, and Arkansas Tomato Shippers, LLC (Doc. 205) is **GRANTED.**

The parties are to attend a Status Conference in El Dorado today to discuss the remaining issues to be set for trial.

**IT IS SO ORDERED this 20th day of May 2011.**

/s/ Robert T. Dawson
_____

Robert T. Dawson
United States District Judge